Argued March 19, affirmed April 26, 1976

# BARACKMAN, *Appellant,*
*v.*
# GENERAL TELEPHONE COMPANY OF THE NORTHWEST, INC., *Respondent.*
# STATE ACCIDENT INSURANCE FUND,
*Cross-Appellant.*
## (No. 35-546, CA 5279)

548 P2d 1341

*J. Michael Gleeson,* Beaverton, argued the cause for appellant. On the briefs were Allen G. Owen and Leaf, Tyner & Gleeson, Beaverton.

*Noreen K. Saltveit,* Portland, argued the cause for respondent. With her on the brief were Merten & Saltveit, Portland.

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for cross-appellant State Accident Insurance Fund. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

THORNTON, J.

## THORNTON, J.

There are two appellants in this workmen's compensation case, claimant and the State Accident Insurance Fund (SAIF).

Claimant appeals from an order of the circuit court affirming the findings and conclusions of the referee and the Workmen's Compensation Board (a) denying claimant's claim of occupational disease and (b) affirming the Board's "own motion" order which had awarded to claimant additional benefits based on his 1937 injury and claim, and charging the claim costs to SAIF.

SAIF cross-appeals from the refusal of the circuit court to entertain its appeal from the Board's "own motion" order.

The essential facts are as follows:

In 1937 claimant suffered a severe crushing injury to his lower spine while working as a garage mechanic. As a result of this accident claimant had a spinal fusion performed on his injured back in 1939. His claim was closed by State Industrial Accident Commission (now State Accident Insurance Fund) with an award for unscheduled disability equal to 95 per cent of the then yardstick used for measuring unscheduled disability.

In September 1952 claimant began work for General Telephone Company (GT) in the supply department. In 1959 he was promoted to the cable splicing department.

In January 1973 claimant was hospitalized because of increased pain and "stooped-overness." A myelogram was performed which showed severe degenerative changes and virtual total blockage in the lumbar spine. It also showed additional difficulty in the cervical area. In January a laminectomy was performed in claimant's cervical area. In November 1973 another spinal fusion was performed in his lumbar area. The expense of the January surgery was paid for privately

as nonjob-related. Claimant filed his claim for workmen's compensation benefits for the November 1973 surgery and time loss, arguing in the alternative that (a) SAIF is responsible because the surgery resulted in an unbroken line from the 1939 surgery or (b) GT is responsible because claimant's symptoms worsened while he was in the employ of GT. According to the record claimant's condition had not yet become medically stationary at the time claimant filed his claim for the 1973 surgery and time loss.

Claimant worked for GT continuously until just before his November 1973 surgery, when he took an extended leave of absence because of his inability to continue working.

There was no specific incident which caused claimant to cease work. Claimant contends, however, that his work activities in the cable splicing department, with their attendant bending, twisting, flexing and lifting, materially contributed over a prolonged period to his present condition and ultimately forced him to terminate work.

GT denied the claim. Claimant then requested a hearing on the denial. Pending that hearing claimant, through his "own motion" request to the Board caused SAIF to be joined in a consolidated hearing before the referee to determine the relationship of claimant's current condition to his employment with GT, as well as to his 1937 injury and surgery.

The referee denied the claim and did not allow any additional benefits of any kind. Claimant then requested review by the Board. The Board affirmed the referee, but in the exercise of its "own motion" jurisdiction awarded claimant additional benefits against SAIF on the 1937 claim.

The circuit court affirmed the Board in all respects. In addition it held that it did not have jurisdiction to entertain SAIF's appeal from the "own motion" portion of the Board's order because the Board's order did

not 'diminish or terminate a former award or terminate medical or hospital care.'

The main thrust of claiment's argument in this court is that the trial court erred in finding that his work for GT did not contribute to his current condition and that GT has no liability therefor.

As a result of our de novo review of the record and evidence, we reach the following conclusions:

First, assuming without deciding that claimant's claim for occupational disease was timely filed, the weight of the medical evidence is that claimant is not suffering from an occupational disease contracted while employed by GT, but rather from degenerative changes (arthritis) to his spine stemming from his original 1937 injury and spinal fusion. Unlike in *O'Neal v. Sisters of Providence,* 22 Or App 9, 537 P2d 580 (1975), the medical evidence here does not establish an occupational disease. The circuit court is therefore affirmed on this point.

Second, while we believe the court erred in its construction of ORS 656.278(3),[1] we conclude that the court reached the correct result, namely, that it had no jurisdiction to entertain SAIF's appeal. Where a trial court's ruling is correct notwithstanding, and can be sustained on another ground, the appellate courts will normally do so. *City of Portland v. Therrow et al,* 230 Or 275, 369 P2d 762 (1962).

The basis for our affirmance on the second point is as follows: Under ORS 656.278(3), SAIF was clearly entitled to a hearing on the Board's order. However, there is no record that SAIF made any request to the Board for such a hearing after the Board's order was entered. Unless such a request is made, SAIF would

---

[1] ORS 656.278(3) provides:

"The claimant has no right to a hearing, review or appeal on any order or award made by the board on its own motion, except when the order diminishes or terminates a former award or terminates medical or hospital care. The employer may request a hearing on an order which increases the award or grants additional medical or hospital care to the claimant.

not be entitled to appeal the Board's decision to circuit court. The prior consolidated hearing before the referee was not the same thing as the hearing before the Board contemplated by ORS 656.278(3). As we read this statute, this hearing comes *after* the Board's order is made, and is a statutory prerequisite to appeal to the circuit court. We cannot agree with SAIF's argument that the prior consolidated hearing dispensed with the necessity of the hearing provided for by this section. The consolidated hearing did not and could not deal with the issue of whether the Board's action in giving claimant additional benefits was correct, because the Board had not yet considered the matter or taken such action.

Finally, as we held in *Calder v. Hughes & Ladd,* 23 Or App 66, 541 P2d 152 (1975), the employer at the time of the first industrial injury causing the back condition remains responsible where, although the workman later accepts employment with a second employer, continuing symptoms indicate that the original condition has persisted and ultimately results in a second period of disability.

We have not overlooked that there was some medical testimony indicating that claimant's work activity with GT may have hastened the onset of the degenerative changes and the amount of symptoms from which claimant is now suffering. As we noted in *Cutright v. Amer. Ship Dismantler,* 6 Or App 62, 486 P2d 591 (1971), however, in factual situations such as this there is no authority for apportionment of the claim costs between successive employers or their insurance carriers, here SAIF on the one hand, and GT and American Motorists Insurance Company on the other.

Accordingly, we affirm on both points, albeit for a different reason as to the second point.

Affirmed.

**SCHWAB, C. J.,** concurring in part and dissenting in part.

I join that portion of the majority opinion that holds General Telephone is not responsible for payment of compensation. I dissent from that portion of the majority opinion that holds the circuit court had no jurisdiction over SAIF's cross-appeal.[1]

The relevant facts are simple. All parties to this proceeding have had a full hearing on the facts and law before a referee and before the Workmen's Compensation Board. Yet the majority holds that SAIF cannot appeal the Board's resulting decision unless it requests another hearing before the Board.[2]

ORS 656.278 grants the Workmen's Compensation Board what is known as the Board's "own-motion jurisdiction"; this consists of authority to change awards of compensation without regard to any of the time limits in the compensation law. As it is specifically authorized to do by ORS 656.726(4),[3] the Board has adopted administrative rules governing the proce-

---

[1] I note that in passing on the merits of claimant's appeal, the majority indirectly passes on the merits of SAIF's cross-appeal. Nevertheless, I dissent because of the undesirable precedent the majority's analysis of the jurisdictional issue creates.

[2] The majority does not deal with what the Board is expected to do when it receives a request for a hearing on issues that have already been the subject of a hearing. Hopefully, the majority would be content if the Board treated such a post-decision hearing request as a petition for rehearing or reconsideration which could be denied without in fact having to hold a second hearing. However, the majority appears to require that there literally be a second hearing.

[3] "The board may make and declare all rules and regulations which are reasonably required in the performance of its duties, including but not limited to rules of practice and procedure in connection with hearing and review proceedings and exercising its authority under ORS 656.278. Such rules may provide for informal prehearing conferences in order to expedite claim adjudication, amicably dispose of controversies, if possible, narrow issues and simplify the method of proof at hearings. The rules shall specify who may appear with parties at prehearing conferences and hearings. ORS chapter 183 is applicable whenever specific procedures covering rulemaking are not provided for in ORS 656.001 to 656.794." ORS 656.726(4).

dures on its own-motion-jurisdiction cases. *See,* OAR 436-83-810 to 436-83-830.

These rules require that requests to the Board to exercise its own-motion jurisdiction be written and documented. OAR 436-83-810(1)(a) and (b). The rules then contemplate the possibility of either a decision on the submitted materials or a hearing:

"If the Board is unable to decide after review of the record * * * it will refer the matter to the Hearings Division with proper instructions for a fact-finding hearing." OAR 436-83-810(1)(d).

"Upon completion of the hearing, the referee shall provide the Board with all documentary evidence presented, and such record of oral proceedings as may be necessary, and proposed findings and recommendations." OAR 436-83-820(2).

No party here claims these regulations are unreasonable or exceed the specific grant of authority stated in ORS 656.726(4).

Once the Board renders an own-motion-jurisdiction decision, judicial review is governed by ORS 656.278(3):

"The claimant has no right to a hearing, review or appeal on any order or award made by the board on its own motion, except when the order diminishes or terminates a former award or terminates medical or hospital care. The employer may request a hearing on an order which increases the award or grants additional medical or hospital care to the claimant."

I think it imperative that we interpret ORS 656.278(3) together with the Board's specifically-authorized implementing regulations. It is obvious to me that under those regulations the Board contemplates making own-motion orders either: (1) on the basis of written materials submitted, or (2) on the basis of a hearing record. I therefore submit that ORS 656.278(3) should be read as requiring a hearing request and a hearing as prerequisites to judicial review only when the Board issues an own-motion

order solely on the basis of written materials submitted.

My interpretation attributes to the legislature the intent that there be an opportunity for a hearing after an own-motion order only when there was no opportunity for a hearing before the order. My interpretation avoids attributing to the legislature the intent that there possibly be a hearing after an own-motion order, see n 2, supra, even though there was a hearing before the order. There is ample precedent for such a commonsense interpretation of the procedural requirements of the compensation law. *Stroh v. SAIF,* 261 Or 117, 492 P2d 472 (1972); *see also, State v. Irving,* 268 Or 204, 520 P2d 354 (1974).