Argued and submitted July 2, Court of Appeals affirmed September 3, 1986

In the Matter of the Compensation of
Ralph W. Compton, Claimant.

COMPTON,
*Petitioner on review,*

*v.*

WEYERHAEUSER COMPANY,
*Respondent on review.*

(WCB 83-10404; CA A34686; SC S32596)

724 P2d 814

James L. Edmunson, Eugene, argued the cause for petitioner on review. With him on the petition were Christopher D. Moore and Malagon & Moore, Eugene.

Allan M. Muir, of Schwabe, Williamson, Wyatt, Moore & Roberts, Portland argued the cause for respondent on review and filed a response to the petition for review.

JONES, J.

**JONES, J.**

Claimant seeks workers' compensation benefits for an increased loss of hearing allegedly caused by on-the-job exposure to loud noise. Claimant prevailed before the referee, the employer appealed to the Workers' Compensation Board (Board), and the Board reversed the referee. The Court of Appeals affirmed the Board without opinion. We allowed review in this case and in *Cain v. Woolley Enterprises,* 301 Or 650, 724 P2d 819 (1986), to interpret the workers' compensation appellate review statutes concerning what evidence the Court of Appeals should consider that may not have been obtainable at the time of the hearing before the referee.

The facts presented to the referee and reviewed by the Board are as follows: Claimant, age 40, began working for Weyerhaeuser in 1966. He had a pre-existing hearing loss from working without hearing protection for two and one-half years at a previous, noisy lumber company job. Claimant worked around loud machinery at Weyerhaeuser for 17 and one-half years. During his first six months at Weyerhaeuser he wore no ear protection; he later used cigarette filters and, eventually, earplugs as ear protection. However, he removed his ear protection 10 to 15 times a day for 5- to 10-minute periods to converse with other workers. Claimant's other exposure to loud noise was minimal, which included occasional use of power tools at home and some hunting and target shooting at a rifle range that required the use of ear protection. Claimant presently works in Weyerhaeuser's office, which is considerably less noisy, but he finds using the telephone difficult and, at times, cannot accurately hear someone speak.

Claimant filed a claim for occupational hearing loss on April 27, 1983. The audiologist, Dr. Ediger, to whom Weyerhaeuser referred claimant, found a seven decibel loss of hearing since 1966 after deducting the loss attributable to aging. Ediger also noted that claimant's speech discrimination ability was poor. Although he characterized claimant's hearing change as slight, Ediger's initial report would not rule out the possibility that work at Weyerhaeuser might have caused the change in hearing.

Claimant was then referred to an ear, nose and throat

specialist, Dr. Hiatt, for evaluation. Hiatt's otological evaluation found no evidence of ear disease and concluded that the cause of additional hearing loss was "undetermined" and not related to noise exposure at Weyerhaeuser, *assuming* adequate ear protection. After reading the otological report, the audiologist, Dr. Ediger, amended his opinion, stating that he did not consider it likely that claimant's hearing loss was due to employment at Weyerhaeuser.

The referee found the claim compensable, in an opinion emphasizing that the experts' conclusions about lack of causation were "based on the *assumption* that claimant wore adequate hearing protection," that claimant had testified that at times he wore no ear protection, and that there was no indication that either expert was aware of "this fact which might conceivably change their opinions." (Emphasis in original.)

The employer requested Board review. The employer also requested a "closing report" from Ediger. For that purpose, Ediger conducted another evaluation after the hearing. After this evaluation, Ediger reported evidence of a further reduction in hearing, albeit slight. The report from this evaluation also stated that after "reviewing and rethinking" the case in light of newly obtained information that claimant had gone without hearing protection when he needed to communicate with co-workers, Ediger felt that:

> "* * * it would be impossible to say that change in hearing from 1966 to 1984, though relatively slight, could absolutely not have resulted from excessive noise exposure as [a] result of employment at Weyerhaeuser. The absence of evidence of medical disease (as indicated in the medical report) would seem to leave the most probable cause of hearing loss to be noise exposure at work, probably during occasions when hearing protection was removed for verbal communication and not immediately replaced."

When the employer requested Board review of the referee's order, claimant moved for remand pursuant to ORS 656.295(5) because the case was "improperly, incompletely or otherwise insufficiently developed or heard by the referee" in the absence of this report. ORS 656.295(5) provides:

> "The review by the board shall be based upon the record submitted to it * * * and such oral or written argument as it

may receive. However, if the board determines that a case has been improperly, incompletely or otherwise insufficiently developed or heard by the referee, it may remand the case to the referee for further evidence taking, correction or other necessary action."

A 2-to-1 majority of the Board denied remand for consideration of the new report, concluding that a report "explaining the [audiologist's] rethinking of his earlier position" was not evidence "which could not reasonably have been produced and discovered before the hearing." The Board was concerned that allowing remand in cases such as this would open the door for remand every time a claimant obtains a new medical opinion.

On the merits, the majority reversed the referee because claimant had not established that his work was "the major cause of the slight worsening" of his hearing loss. The dissent argued that the audiologist's re-analysis "is based to a substantial degree on new evidence" and that "this is not a case where, when faced with an adverse professional explanation of medical causation, the claimant has shopped around the medical community and ultimately found professional support for his theory of causation. In this case medical causation was heretofore without professional explanation."

On appeal, claimant moved pursuant to ORS 656.298(6) to have the Court of Appeals consider the report as "additional evidence concerning disability that was not obtainable at the time of the hearing." ORS 656.298(6) provides:

"The review by the Court of Appeals shall be on the entire record forwarded by the board. The court may remand the case to the referee for further evidence taking, correction or other necessary action. However, the court may hear additional evidence concerning disability that was not obtainable at the time of the hearing. The court may affirm, reverse, modify or supplement the order appealed from, and make such disposition of the case as the court determines to be appropriate."

The Court of Appeals denied the motion and affirmed the Board.

The issue at hand is: Should the Court of Appeals consider an expert's re-evaluation of causation made after

receiving previously available but unobtained information about a worker's exposure to on-the-job hazards as evidence "not obtainable at the time of the hearing"?

The statutory scheme provides three methods for requesting the decisionmaker to consider evidence obtained after the referee's hearing. A party may (1) ask the Board to remand to the referee on grounds that the "case has been improperly or otherwise insufficiently developed or heard by the referee for further evidence taking," ORS 656.295(5); (2) ask the Court of Appeals to remand to the referee "for further evidence taking," ORS 656.298(6); or (3) ask the Court of Appeals to hear the additional evidence, *id.*

ORS 656.295(5), *ante* at 644-45, provides that the Board may remand a case to the referee for further evidence taking or correction if it determines that "a case has been improperly, incompletely or otherwise insufficiently developed or heard by the referee." ORS 656.298(6), *ante* at 645, provides that the Court of Appeals may grant a motion to hear additional evidence concerning disability if: (1) the additional evidence concerns disability, and (2) the evidence was unobtainable before hearing.

The Court of Appeals has construed ORS 656.298(6) to require that before the Court of Appeals will remand to the referee "for further evidence taking, correction or other necessary action," there must be a "compelling reason" to do so, such as to clear up an inconsistency or fill in a void in the record. *See Tanner v. P & C Tool Co.*, 9 Or App 463, 497 P2d 1230 (1972); *accord Brenner v. Industrial Indemnity Co.*, 30 Or App 69, 73, 566 P2d 530 (1977).

■ But did the legislature intend to restrict the Court of Appeals itself from taking additional, unobtainable evidence (as opposed to remanding to the referee) only if there was a "compelling reason" to do so? We believe it did. Given the total scheme of the workers' compensation statutes, which favors prompt and final resolution of claims that have been fully developed, any additional evidence should not be admitted at the Court of Appeals unless there is compelling reason to do so, and a compelling reason exists when the evidence (1) "concerns disability," (2) was "not obtainable at the time of hearing," and (3) it is reasonably likely to affect the outcome of the case.

Claimant asserts that Ediger's last opinion on causation was not available at the time of the hearing and thus was not obtainable. Claimant points out that he prevailed before the referee without Ediger's support on that issue and that the new evidence surfaced, unsolicited by him, when he was re-examined at the request of the employer for "closing purposes."

In *Mansfield v. Caplener Bros.*, 3 Or App 448, 452, 474 P2d 785 (1970), the first of a series of cases, the Court of Appeals wrote:

"If the system contemplated by the statute—*de novo* review on the record—is to have any meaning, it is essential that there be a specific time as of which issues are to be determined. The Workmen's Compensation Law contemplates that it be the time of hearing. ORS 656.295(3) and (5). If the circuit court is permitted to consider evidence of events subsequent to the hearing, it no longer conducts a review, but itself becomes a hearing officer, without having the benefit of either the hearing officer's or the Workmen's Compensation Board's assessment of the new evidence. The circuit court found that the new testimony 'concerning disability was not obtainable at the time of the first hearing.' The court was correct in its finding in the sense that the evidence was not *available* at the time of the hearing because none of these tests and evaluations had then been conducted. However, this evidence could have been developed by the hearing officer upon his own initiative or upon the order of the reviewing authority (board or judge). Therefore, the evidence was, in fact, 'obtainable' within the meaning of ORS 656.298(6) at the time of hearing." (Emphasis in original.)

The Court of Appeals continued to make the distinction between unobtainable and unavailable evidence. In *Maumary v. Mayfair Markets*, 14 Or App 180, 184, 512 P2d 1370 (1973), the court wrote:

"* * * Here, as in *Mansfield*, the evidence was not available at the time of hearing since all the vocational rehabilitation efforts had not then occurred. However, as in *Mansfield*, the evidence was still 'obtainable' at that time. In this case the claimant, at the time of hearing, knew that further rehabilitation efforts were to occur. The claimant could have requested a continuance from the hearing officer but did not. Thus the evidence could have been obtained at the time of that hearing, and it would have been error for the court to hear it."

In *Logue v. SAIF,* 43 Or App 991, 996 n 6, 607 P2d 750 (1979), the Court of Appeals stated: "We may have erred in admitting these additional medical reports. They may have been 'obtainable,' although not available at the time of hearing."

As recently as *Kienow's Food Stores v. Lyster,* 79 Or App 416, 420 n 2, 719 P2d 890 (1986), the Court of Appeals refused to consider a doctor's medical report: "[Dr.] Long's report was not *available* at that time because it was not in existence, but it was *obtainable.* It only needed to have been requested at the appropriate time." (Emphasis in original.)

■ This court previously has not distinguished between unobtainable and unavailable evidence in workers' compensation cases. We agree with the long line of Court of Appeals decisions that there is a distinction and we essentially agree with the distinction as drawn by that court.

■ But in the present case we still must determine the status of Dr. Ediger's report rendered after the hearing. That report was not requested by the worker, but was requested by the employer for closing the claim. This was not a case of a claimant disappointed with the referee's decision who engaged in opinion shopping in the medical community to seek additional benefits.

But does the erroneous factual foundation or the change of opinion create unobtainable evidence? The answer to that inquiry is in the negative. All claimant had to do upon receiving Ediger's first report to the referee was to produce the doctor to testify at the hearing and merely ask the doctor to assume the disputed fact of unprotected exposure at work and then ask the doctor if this would change his opinion. In the alternative, the worker could have supplied this information to the doctor and asked for a revised opinion. All this information existed long before the hearing and, in that sense, was *obtainable.* The fact is that claimant had three hearing interviews with the doctor in which he related his noise exposure at work. If he failed to advise the doctor correctly, he can scarcely complain now. If he did advise the doctor and the doctor neglected to consider the correct history, that erroneous assumption should have been corrected by his attorney at or before the hearing. The evidence may not have been made available at the hearing, but it certainly was

obtainable.

■     As we mentioned previously, the workers' compensation scheme requires not only promptness but also finality in the decisionmaking process, and to hold otherwise would allow virtually every case to be reopened when a belated discrepancy in the evidence is called to the attention of the claimant.

The Court of Appeals is affirmed.